### DuBrul v. DuBrul et al.

**Son Given No Interest in Father's Estate Cannot Examine Books with Reference to Distribution.**

Where under the terms of a will general authority is given to the trustees of the estate to make such advancements to any of the sons of testator as may seem wise to said trustees, and one of the five sons is given no interest in the estate of his father and is not entitled to share in its distribution, such son cannot compel the executors to give him a statement of the advancements made to him and to his brothers by his father or permit an examination of decedent's books to obtain such statement.

ERROR to common pleas.

*Charles F. Dolle,* for plaintiff in error.
*Anthony B. Dunlap,* for defendant in error.

**JONES, J.**

The will of Napoleon DuBrul appoints his widow and his son Ernest as executors, and directs the payment of his debts as soon as convenient after his decease. All the rest and residue of the estate is given to his wife and four of his sons in trust, to manage and control during the lifetime of his wife, and out of same to provide for her support.

The third item is as follows:

"Item 3. I authorize and empower my said trustees to make such advancements to my sons, or any of them, as may seem to said trustees to be wise, and as the condition of my estate shall justify; and I hereby direct my trustees to charge each of such sons with the amounts so advanced as part of their several distributive shares of my estate."

The fourth item directs the trustees upon tne death of his wife to divide his estate into five equal parts, four of which parts are devised and bequeathed to his four sons, Ernest, Davilla, Clarence and Telford, one part to each, "subject however to such advancements as may have been made to them by my trustees as herein provided, or by me." It also makes

DuBrul v. DuBrul.

provision for the care of the widow or of the issue of any of said four sons, in the event of the death of a son before the death of testator's wife. It then recites:

"I have made advancements, and may in the future make advancements to some of my sons. The amounts so advanced will be found charged to such sons in my private books, to which they have been transferred from private papers or memoranda, and from the books of the Miller, DuBrul & Peters Mfg. Company, and of the Summerside Poultry Farm.

"I direct and will that my trustees, at the time of the distribution of my estate, as herein provided, shall charge such son or sons in computing his or their distributive shares, with such sum or sums as may respectively be shown by my books, papers, etc., to be due from each, and deduct the same from the share or shares such son or sons would otherwise receive, so that my bounty to each may be exactly equal."

Then after reciting certain charges and credits as to his son Orville, he provides as follows:

"As I consider that Orville has proved himself so lacking in business judgment as to be incapable of properly handling or caring for any share of my estate that might be coming to him on final distribution, I direct and will that my trustees shall retain in their hands the one-fifth part remaining after distributing the four-fifths as above provided in trust however for the following purposes: to manage, control, and look after said part; to use the income, if any, and the principal, if in their judgment that be proper, to provide suitable support for Nan McDaniels DuBrul, wife of my son, Orville, and their children Napoleon and Marguerite DuBrul, as well as education for said children: and to pay said one-fifth part, less all deductions for advances heretofore made, or hereafter to be made, or as much as may then remain; in equal parts to my said grandchildren Napoleon and Marguerite DuBrul, when the one latest to arrive at legal age shall have reached that age."

Orville N. DuBrul, now as plaintiff in error, seeks to reverse the judgments of the common pleas and probate courts refusing to require the executors to give him a statement of the advancements made to him and to his brothers by his father and

entered by him in his private books, or to permit an examination of decedent's books to obtain such statement.

Plaintiff in error claims that, regardless of his ultimate interest in his father's estate, the trustees are authorized in their discretion to make advancements to him under the provisions of Item 3, and for that reason he is entitled to see or be furnished a statement from the books of decedent. The application was made to the executors, not to the trustees. It is therefore premature at least, as it appears that the estate has not yet been settled by the executors and turned over to the trustees, with whom plaintiff in error would deal if his claim were valid.

But in the opinion of this court the probate court was right in deciding that Orville N. DuBrul has no interest in the estate of his father, Napoleon DuBrul, by the terms of his will, and for that reason he is not entitled as a matter of right to be furnished such a statement or to examine such books. Although the language of Item 3 is sufficiently broad to apply to any of the five sons including Orville, the trustees would not under its terms be justified in making any advancement to him because they would be required to charge the amount so advanced to his distributive share of the estate. Orville has no such distributive share, and they have no authority to make any such charge against that of his wife and children who take the one-fifth part which might otherwise have gone to him.

Plaintiff in error has no interest in the estate of Napoleon DuBrul, and the judgment is therefore affirmed.

Judgment affirmed.

**Gorman** and **Hamilton, JJ.,** concur.